UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | |
|---|---|
| MELINDA ABNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO.   5:18-mc-99999 |
| | ) |
| KNOX COUNTY BOARD | ) |
| OF EDUCATION | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

COMPLAINT AND DEMAND FOR JURY TRIAL

I. NATURE OF THE CASE

1.      Plaintiff, Melinda Abner ("Abner"), by counsel, brings this action

against Defendant, Knox County Board of Education ("Defendant") alleging

violations of the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42

U.S.C. § 12101 *et seq.*; Title VII of the Civil Rights Act of 1964, as amended, 42

U.S.C. § 2000e, *et seq.* and Kentucky Civil Rights Act ("KCRA").

II. PARTIES

2.      Abner is a resident of Laurel County in the Commonwealth of

Kentucky, who at all times relevant to this action resided within the geographical

boundaries of the Eastern District of Kentucky.

3.      Defendant maintains offices and conducts business within the

geographical boundaries of the Eastern District of Kentucky.

### III. JURISDICTION AND VENUE

4.      Jurisdiction is conferred on this Court over the subject matter of this litigation pursuant to 28 U.S.C. §1331; 28 U.S.C. § 1343; 29 U.S.C. § 2617(a)(2); 42 U.S.C. § 12117; and 42 U.S.C. § 2000e, *et seq.*

5.      Defendant is an "employer" as that term is defined by 29 U.S.C. §2611(4), and 42 U.S.C. § 12111(5)(A).

6.      Beginning in or about 2006 and continuing until present, Abner is an "eligible employee" as that term is defined by 29 U.S.C. §2611(2).

7.      Abner was an "employee" as that term is defined by 42 U.S.C. § 12111(4).

8.      Abner satisfied her obligation to exhaust her administrative remedies having timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission against Defendant alleging discrimination because of her disability and sex; and retaliated by creating a hostile work environment for Abner because of her disability and sex.  Abner received her Notice of Suit Rights and timely files this action.

9.      Defendant employs more than two hundred (200) employees.

10.     A substantial part of the events, transactions, and occurrences relevant to this lawsuit arose within the geographical environs of the Eastern District of Kentucky; thus, venue is proper in this Court.

### IV. FACTUAL ALLEGATIONS

11.     Abner was hired by Defendant in or around 2005. In or around 2013, she moved into a new position as a special education teacher at the Lynn Camp School's high school.

12.     Abner's direct supervisor was Principal Anthony Pennington ("Pennington").

13.     At all relevant times, Abner was qualified for her position and met or exceeded Defendant's legitimate performance expectations.

14.     Beginning in or around 2014, Pennington engaged in repeated sexual harassment of Abner, including stating/sending inappropriate sexual remarks and request, placing his hands on Abner's body, pulling Abner onto his lap, and pushing his erect penis against her.

15.     Abner has repeatedly rejected Pennington's advances, which led to Pennington's retaliation against Abner.  In response, Pennington retaliated against Abner by taking actions that include, but are not limited to, threatening her job, monitoring her actions, assigning her difficult and disproportionate amount of work, and refusing to provide reasonable accommodations required for her disabilities. Principal Pennington's harassment and retaliatory actions continued until September 2018.

16.     Abner suffers from fibromyalgia, migraines, anxiety, and irritable bowel syndrome.  The conditions individually and in conjunction meet the definition of disability under the Americans with Disabilities Act.

17.    In or around January 2017, Abner requested reasonable accommodations to permit her to continue to perform the essential functions of her job notwithstanding the symptoms of her disabilities.  Kristen Parsons ("Parsons"), Defendant's 504 Coordinator, met with Abner to address the requested accommodations, but only belittled and bullied Abner during the process.  Although Defendant agreed to many of the requested accommodations in or around May 2017, Parsons ignored some of Abner's requests and made fun of her for others. Abner's accommodation stating she would be provided with a quiet room to go to that is free of loud noises was never provided. Knowing of Abner's sensitivities and this accommodation request, Defendant retaliated against Abner by forcing her to share a room with the music teacher, which was noisy and harmful to Abner's disabilities. Upon Abner's request to be relocated to a different classroom, Defendant only offered her a classroom full of filing cabinets, boxes, and chairs stacked dangerously high, in which Defendant refused to clear out and make safe.

18.     Defendant also conditioned granting of the requests on Abner complying with requirements not imposed on other, non-disabled employees. Defendant also failed to actually provide the accommodations.

19.    Additionally, after Abner requested accommodations, Principal Pennington retaliated against Abner and harassed her because of her requests for accommodation, from the day she requested the accommodations until Abner was forced to take extended sick leave due to the hostile environment, on October 11, 2017.

20.     Specifically, Abner requested to be late for work and leave work early as needed when she experienced symptoms of her disabilities.  When forced to miss a portion of the day due to her disabilities, she requested to be able to complete her work from home.  She also requested to be excused from after-school activities, such as attending ball games and teacher's meetings, and to be provided notes by email from any such meeting.  None of these accommodations would have interfered with Abner's ability to perform all essential functions of her job, nor would they have caused an undue burden on Defendant.

21.     In response, Defendant required Abner to report each incident to a supervisor, use sick leave, and make up time missed.  Non-disabled and male teachers are not required to report late arrival or early departure or use sick leave or make up time they miss when they leave early.

22.     In Fall 2017, Principal Pennington assigned Abner to almost twice the number of special education students and more than three times the number of substitutions for other teachers than in the previous year, although substituting was not a normal part of Abner's duties.  When substituting, Abner was unable to leave the school campus early and work from home when sick.  Defendant assigned Abner to twice the number of early-morning assignments she had the prior year, which meant she was required to arrive early, rather than late as requested.  Principal Pennington also changed Abner's planning period from sixth period to fifth period, so that Abner was unable to leave the campus early when needed, to avoid illness.

Defendant also assigned Abner to at least two after-school activities in August and September 2017.

23.     Abner also requested that she work without extreme temperatures, that she have her own space to work in quiet, that she be subject to reduced noise and stress, and that she work close to an employee restroom.  None of these accommodations would have interfered with Abner's ability to perform all essential functions of her job, nor would they have caused an undue burden on Defendant.

24.     However, in Fall 2017, Defendant assigned Abner to a classroom that would be shared with another teacher and his class and then moved Abner to a classroom with no air conditioning or heat. Abner asked for a fan, but Defendant did not supply a fan.  The principal claimed the school was building a classroom with a bathroom for her, but this was untrue. The principal was mocking Abner and her need for a bathroom.  A male, non-disabled special education teacher was assigned to his own classroom, with temperature control, next to a bathroom, instead of assigning Abner to that classroom.  Abner asked to be moved to an available classroom next to the other special education teacher's classroom, but this request was denied.  When assigned to substitute for other teachers, Abner was often required to work in hot and noisy environments.  The principal also assigned Abner to a schedule that did not permit her to meet her students' legally required special education needs.

25.     After Abner requested accommodations, Pennington ignored her, berated her and treated her angrily, and reprimanded her for being one minute late

– even if she was helping students get to class or retrieving items from her vehicle.

Pennington watched her movements on the school's video monitoring system and

questioned her about times she left a classroom or went to the restroom when she

was sick.  He also criticized and embarrassed her in front of other educators.  Often

when Abner arrived late to work, an assistant principal, on the principal's behalf,

reprimanded her for being late, despite her accommodations.  Non-disabled and male

teachers are not subject to the same scrutiny.

     26.    In or around Fall 2017, Principal Pennington took away Abner's ability

to sign out as she left, and instead required her to personally see him before leaving

early.  This caused Abner additional stress and delay in leaving the workplace.

     27.    On or about October 3, 2017, Defendant placed Abner on a corrective

action plan, for being late and failing to attend after-school activities, despite

Abner's requested accommodations.

     28.    During the corrective action meeting, Abner experienced flare-ups

relating to her disabilities, which resulted in her having to promptly leave the

meeting.  As a result of her quick exit, Abner's purse was given to her by the

Assistant Principal. Abner was told by the Assistant Principal to not worry about

her remaining items in the meeting room, which included a student folder.

     29.    On the following school day, October 10, 2017, Defendant reprimanded

Abner for allegedly leaving the folder "out in the open."  This false accusation

exacerbated Abner's disabilities, which required her to leave work for the rest of the

school day.

30.     On October 11, 2017, Principal Pennington informed Abner she would need to use sick leave for time she had missed the prior day.  Non-disabled and male teachers are not required to use sick leave when they only miss a portion of a school day.

31.     As a result of the hostile environment created by Defendant, combined with the Defendant's failure to provide Abner with reasonable accommodations necessitated by her disabilities, the symptoms relating to her disabilities worsened. This caused Abner's medical provider to place her on sick leave for one year beginning on October 11, 2017.

32.     On or about August 2, 2018, returned to work with Defendant. Upon her return, Defendant's harassment and retaliation of Abner started immediately. Abner was relocated and demoted from her classroom in the high school to a shared classroom in the elementary school.  Abner was not allowed to take the desk, computer, or personal items from her high school classroom, however, people without disabilities have always been permitted to take these things when assigned to a new classroom.  Abner shared her elementary school classroom with two other teachers. The desk Defendant provided Abner was full of dead cockroaches while the other two teachers were provided executive style desks and supplies.

33.     Upon returning to work, Abner was forced to share a room with two special education teachers while Defendant provided a new teacher with his own classroom. Students of special education teachers routinely gathered and were serviced in one room throughout the day. Abner was required to take her students

outside to service them, which was not requirement for teachers without disabilities. After several attempts to obtain a room to service her students in, as opposed to outside, Defendant instructed Abner to use the band room.

34.     Immediately after returning in August 2018, Pennington, who works at the high school, goes to the elementary school every morning to watch and harass Abner as she enters the building. In addition, Pennington was assigned to work morning foyer duty in the elementary school with Abner.

35.     In or around September 2018, Abner injured her rotator cuff, neck, and back while in the band room servicing her students. As a large filing cabinet pushed by a student was falling down, Abner stuck her arm out to catch the cabinet to keep a nearby student from being injured.  As a result of the injuries to her rotator cuff, neck, and back, Abner has missed many days of work due to doctor appointments and mandatory treatment of her injuries.  Upon her return in August 2018, Defendant refused to offer Abner health insurance until January 2019. However, Defendant has never denied or delayed health insurance coverage to any of its employees, including new hires.

36.     Defendant further retaliated against Abner by assigning her a schedule with an excessive work load that allows no time for lunch or planning. Employees without disabilities are assigned schedules that allow time for lunch and planning.

37.     In or around August 2018, Abner reported the continued harassment, retaliation, and unsanitary working conditions in an email to the superintendent Kelly Sprinkles. The superintendent stated that having a clean restroom was not

part of her "plan". Due to Defendant's continued discrimination and harassment,

Abner now suffers from depression.

38.     Abner reported the sexual harassment of Pennington to Sharon

Oxendine, a Kentucky Education Association ("KEA") employee. Oxendine stated she

would contact Superintend Sprinkles and address the allegations. Sprinkles and

Oxendine discussed the harassment, discrimination, and retaliation against Abner.

However, no action was taken by Sprinkles and Pennington continues to harass

Abner.

39.     Defendant failed to provide reasonable accommodations for Abner's

disabilities; retaliated against her for requesting and utilizing reasonable

accommodations; discriminated against her because of her disability and sex; and

created a hostile work environment for her because of her disability and sex, in

violation of the Americans with Disabilities Act and Title VII of the Civil Rights Act

of 1964.

40.     Abner has suffered and continues to suffer damages as a result of

Defendant's unlawful actions.

## V.  CAUSES OF ACTION

### COUNT I:  DISABILITY DISCRIMINATION

41.      Abner hereby incorporates paragraphs one (1) through forty (40) of her

Complaint.

42.     Defendant violated Abner's rights as protected by the ADA, 42 U.S.C. §

12101 *et seq*. and the KCRA by discriminating against her because of her actual or perceived disability.  Defendant's response to Abner's anxiety, migraines, irritable bowel syndrome, fibromyalgia, and obsessive-compulsive disorder and lack of accommodation violated her legal rights under the ADA and KCRA.

43.     Defendant's actions were intentional, willful, and in reckless disregard of Abner's rights as protected by the ADA and KCRA.

44.     Abner has suffered and continues to suffer harm as a result of Defendant's unlawful actions.

### COUNT II: VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT OF 1964 – SEXUAL HARASSMENT

45.     Abner hereby incorporates paragraphs one (1) through forty-four (44) of her Complaint.

46.     Abner was subject to unwelcome sexual advances and a hostile work environment because of her sex.

47.     Defendant was made aware of the sexual harassment but failed to take prompt remedial action.

48.     Defendant's actions were intentional, willful, and in reckless disregard of Abner's rights as protected by Title VII of the Civil Rights Act of 1964.

49.     Abner has suffered damages as a result of Defendant's unlawful actions

### COUNT III: VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT OF 1964 – RETALIATION

50.      Abner hereby incorporates paragraphs one (1) through forty-nine (49)

of her Complaint.

51.     Abner engaged in protected activity when she reported harassment and hostile work environment that she was enduring and when she filed an EEOC Charge of Discrimination alleging discrimination on the basis of disability and sex.

52.     Defendant retaliated against Abner by harassing her in the workplace and denying her reasonable accommodations she requested for her disability.

53.     Defendant also retaliated against Abner by harassing her after she refused his sexual advances.

54.     Defendant's actions were intentional, willful, and taken in reckless disregard of Abner's legal rights.

55.     Defendant's unlawful actions have violated Abner's rights as protected by Title VII of the Civil Rights Act of 1964, the KCRA, and the ADA.

## VI.  REQUESTED RELIEF

WHEREFORE, Plaintiff, Melinda Abner, respectfully requests that this Court enter judgment in her favor and award her the following relief:

1.     Reinstate Abner to the position, salary, and seniority level she would have enjoyed but–for Defendant's unlawful actions; and/or award her front pay in lieu thereof;

2.     All wages, benefits, compensation, and other monetary loss suffered as a result of Defendant's unlawful actions;

3.     Compensation for any and all other damages suffered as a consequence of Defendant's unlawful actions;

4.      Compensatory damages for Defendant's violations of Title VII of the Civil Rights Act of 1964 and the ADA, including lost future earning capacity;

5.      Punitive damages for Defendant's violation of the Title VII of the Civil Rights Act of 1964 and the ADA;

6.      All costs and attorney's fees incurred as a result of bringing this action;

7.      Pre- and post-judgment interest on all sums recoverable; and

8.      All other legal and/or equitable relief this Court sees fit to grant.


Respectfully submitted,


By: /s/ Andrew Dutkanych III
Andrew Dutkanych III, Atty No. 23551-49
BIESECKER DUTKANYCH & MACER, LLC
411 Main Street
Evansville, Indiana 47708
Telephone: (812) 424-1000
Facsimile: (812) 424-1005
Email: ad@bdlegal.com

By: /s/Charles D. Matlock
Charles D. Matlock, Atty No. 97515
BIESECKER DUTKANYCH & MACER, LLC
101 North Seventh St.
Louisville, Kentucky 40202
Telephone: (502) 561-3443
Facsimile: (812) 424-1005
Email: dmatlock@bdlegal.com

*Attorneys for Plaintiff, Melinda Abner*

## DEMAND FOR JURY TRIAL

Plaintiff, Melinda Abner, by counsel, requests a trial by jury on all issues

deemed so triable.


Respectfully submitted,



By: /s/ Andrew Dutkanych III
Andrew Dutkanych III, Atty No. 23551-49
BIESECKER DUTKANYCH & MACER, LLC
411 Main Street
Evansville, Indiana 47708
Telephone: (812) 424-1000
Facsimile: (812) 424-1005
Email: ad@bdlegal.com

By: /s/Charles D. Matlock
Charles D. Matlock, Atty No. 97515
BIESECKER DUTKANYCH & MACER, LLC
101 North Seventh St.
Louisville, Kentucky 40202
Telephone: (502) 561-3443
Facsimile: (812) 424-1005
Email: dmatlock@bdlegal.com

*Attorneys for Plaintiff, Melinda Abner*